United States District Court
Southern District of Texas
**ENTERED**
December 13, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| JEWELL THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:22-CV-00170 |
| | § | |
| SVEN STRACK, *et al*, | § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**</u>

Plaintiff Jewell Thomas, appearing *pro se* and *in forma pauperis*, has filed this prisoner

civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff claims that Defendants violated his

constitutional rights in several respects, his rights under the Americans with Disabilities Act

(ADA), 42 U.S.C. § 12112(b)(5)(A), the Rehabilitation Act (RA), 29 U.S.C. § 794, and the

conspiracy laws under 42 U.S.C. §§ 1983, 1985, and 1986.  Plaintiff's case is subject to

screening pursuant to the Prison Litigation Reform Act.  *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §

1915A.

Plaintiff has stated, for purposes of screening: (1) Eighth Amendment deliberate

indifference claims against Sven Strack, David Dougherty, and Skinner Sturgis in their

individual capacities; and (2) ADA and RA claims against Sven Strack, David Dougherty,

Skinner Sturgis, Jerry Sanchez, Placido Samaniego, and Bobby Lumpkin in their official

capacities.  Accordingly, the undersigned recommends that these claims be RETAINED.  The

undersigned will order service on Defendants.  Further, the undersigned recommends that

Plaintiff's remaining § 1983, § 1985, and § 1986 claims against the remaining Defendants in

their individual capacities be DISMISSED with prejudice as frivolous or for failure to state a claim for relief.

### A. *Jurisdiction.*

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

### B. *Background.*

#### 1. *Plaintiff's § 1983 action.*

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is housed at the McConnell Unit in Beeville, Texas. Plaintiff's allegations in this case arise in connection with his current housing assignment.

In this action, Plaintiff sues the following defendants: Captain Sven Strack ("Captain Strack"); Lieutenant David Dougherty ("Lieutenant Dougherty"); Captain Skinner Sturgis ("Captain Sturgis"); Warden Jerry Sanchez ("Warden Sanchez"); Deputy Warden Placido Samaniego ("Deputy Warden Samaniego"); and TDCJ-CID Director Bobby Lumpkin ("Director Lumpkin"). (Doc. No. 1, pp. 8-9.) Plaintiff generally claims that his constitutional, § 1985, § 1985, and ADA and RA rights were violated in connection with his placement in prehearing detention and confiscation of his personal property. *Id.* at 13-44. Plaintiff seeks monetary relief. (Doc. No. 1, pp. 10, 45; Doc. No. 10, p. 71.)

### 2. *The* Spears *hearing.*

The undersigned conducted a *Spears*[1] hearing in which Plaintiff was given an opportunity to explain his claims. The following representations were made either in Plaintiff's complaint (Doc. No. 1) or at the *Spears* hearing.

In 1996, Plaintiff was involved in a motor vehicle accident that led to him suffering an open tibia fracture in his left leg and undergoing 12 surgeries. (Doc. No. 10, p. 7.) Plaintiff lost five inches of bone in his left leg, leaving him with what he calls a "leg length discrepancy." *Id.* Plaintiff has also been diagnosed with what he terms a "lateral pelvic tilt" due to this leg length discrepancy. *Id.* As a result, Plaintiff states that he suffers from chronic pain over his entire body. *Id.* In addition to his physical disabilities, Plaintiff states that he has been diagnosed with major depressive disorder with psychotic features, schizophrenia, and post-traumatic stress disorder (PTSD). *Id.* at 7-8.

On February 6, 2022, Plaintiff received a disciplinary case on a charge unrelated to the claims in this case. (Doc. No. 10, p. 19.) As a result of that disciplinary case, Plaintiff was placed in prehearing detention. *Id.* Plaintiff acknowledged that it was "automatic policy" for inmates placed in prehearing detention to be confined to a cell 24 hours a day. *Id.* at 17-18.

On February 8, 2022, in the late afternoon, an officer came to Plaintiff's detention cell to collect Plaintiff's food tray. (Doc. No. 10, pp. 8, 10.) Because there was a "great deal of water" in his cell, Plaintiff did not want to step into the water to hand the tray to the officer. *Id.* Instead, according to Plaintiff, he tossed the tray through the food slot. *Id.* at 8. Plaintiff testified that the

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

food tray apparently struck the officer's pinkie finger, and so Plaintiff was charged with assaulting an officer.  *Id.* at 8-9.

Plaintiff stated that an unwritten policy existed under which, once an inmate uses state property as a weapon, the inmate's property is subject to being confiscated.  (Doc. No. 10, p. 9.)  Following the incident with the officer, Captain Strack[2] ordered the confiscation of Plaintiff's property, including his clothes, mattress, and prescribed medications.  *Id.* at 10.  Plaintiff testified that Captain Strack was physically present around Plaintiff's cell at the time his property was taken.  *Id.* at 11.  According to Plaintiff, an Incident Command System (ICS) was called, requiring Strack's presence at the scene to monitor the situation.  *Id.*

Lieutenant Dougherty,[3] Captain Sturgis, and other correctional officers were also present when the ICS arrived.  (Doc. No. 10, p. 12.)  Plaintiff testified that after staying for three to four minutes, Captain Sturgis walked away.  *Id.*  Captain Strack allegedly instructed Lieutenant Dougherty to confiscate all of Plaintiff's personal property from his cell.  *Id.* at 27-28.  Captain Strack allegedly told Plaintiff that he believed Plaintiff deliberately struck the officer with the food tray and that Plaintiff "needed to take [his] punishment like a man."  *Id.* at 28.  The medications allegedly confiscated from Plaintiff consisted of blood pressure, diabetes, cholesterol, acid reflux, and pain medications.  *Id.* at 13.  Plaintiff states that he also had certain medical passes taken from him.  *Id.* at 14.

---

[2]  At the time this incident occurred, Plaintiff testified, Captain Strack was a lieutenant.  (Doc. No. 10, p. 10.)  He has since been promoted to captain.  *Id.*

[3]  At the time this incident occurred, Plaintiff testified, Lieutenant Dougherty was a sergeant.  (Doc. No. 10, p. 10.)  He has since been promoted to lieutenant.  *Id.*

According to Plaintiff, the property taken from him was supposed to be returned seven days later.  (Doc. No. 10, p. 15.)  Plaintiff, however, did not receive most of his property back until 15 days later, on February 23, 2022.  *Id.* at 14-15. Plaintiff testified at the *Spears* hearing that he was unable to take medications, other than insulin, during this 15-day period because the officers never gave him back the proper dosage of medications to take.  *Id.* at 15.  Plaintiff states that he also had no access to insulin for the seven-day period after February 8, 2022.  *Id.*

During the immediate seven-day period following the February 8, 2022 incident, a "big shield" was placed around Plaintiff's cell door.  (Doc. No. 10, p. 15.)  During this period, Captain Sturgis ordered Plaintiff to receive a "food loaf" as his meal three times a day.  *Id.* at 16, 38.  Plaintiff describes a "food loaf" as "a thin piece of bread, and inside that bread are a bunch of prunes."  *Id.*  Plaintiff stated that he was ordered to be naked for this seven-day period, but was issued a paper gown.  *Id.* at 24.  According to Plaintiff, the paper gown was totally destroyed within 24 hours and, despite Plaintiff's request, Plaintiff did not receive a replacement gown.  *Id.* at 24-25.  Plaintiff testified that on February 15, 2022, at the end of the seven-day period, the shield was removed and Plaintiff received his clothes back.  *Id.* at 25.

Plaintiff's disciplinary hearing on his assault charge occurred on March 7, 2022.  (Doc. No. 10, p. 14.)  Before his disciplinary hearing, Plaintiff was ordered to be confined to his cell 24 hours a day.  *Id.* at 17.  Overall, Plaintiff was confined in the prehearing detention cell from February 6, 2022 until March 22, 2022.  *Id.* at 19-20.

Plaintiff describes the conditions of his detention cell as having no heat.  (Doc. No. 10, p. 20.)  Otherwise, the conditions of the detention cell were no different from any other cell.  *Id.*  According to Plaintiff, he was only allowed to visit the Medical Department for his insulin injection after the initial seven-day period had passed.  *Id.* at 20.

Captain Strack allegedly told Plaintiff on February 8, 2022, that it would be 30 degrees outside that night.  (Doc. No. 10, p. 21.)  Plaintiff states that he was unable to sleep that evening due to the cold and the fact his naked body was sitting on a steel bed frame.  *Id.* at 21-22. Plaintiff also testified that he did not have any bedding or a mattress.  *Id.* at 22.  During the period when Plaintiff allegedly had no clothes to wear in the cold cell, he had nightmares, racing thoughts, anxiety, and felt depressed.  *Id.* at 23.  Because Plaintiff was allegedly forced to stand up most of the time in the cell, he experienced pain throughout his body because of his leg length discrepancy and arthritis condition.  *Id.*  Plaintiff was unable to identify any other inmate with disabilities facing disciplinary charges who received more favorable treatment than he received. *Id.* at 26-27.

Sometime between March 9 and March 22, 2022, Plaintiff was notified that he would be reassigned to Building 8, which housed inmates with the same custody level as Plaintiff.  (Doc. No. 10, pp. 19-20.)  Plaintiff testified, however, that he refused to leave to Building 8 until March 22, 2022.  *Id.* at 20.

Plaintiff asserts that Captain Strack acted with deliberate indifference to Plaintiff's serious medical needs, because he should have been aware of Plaintiff's open disabilities at the time he ordered the confiscation of Plaintiff's medications and clothes.  (Doc. No. 10, pp. 29-30.) Further, Plaintiff alleges that Captain Strack knew that Plaintiff was in pain and needed his pain medication, because Plaintiff allegedly told him that he suffered from arthritis.  *Id*.  Plaintiff claims that Captain Strack violated his due process rights by taking his personal property without a hearing and effectively punished Plaintiff before his disciplinary hearing took place on March 7, 2022.  *Id.* at 30-31.

According to Plaintiff, Captain Strack also violated Plaintiff's ADA and RA rights, because Plaintiff needed his medications for his disabilities; Plaintiff was denied a reasonable accommodation in the form of a mattress—because his pain levels prevented him from lying down on a steel bed frame; Captain Strack forced Plaintiff to stand in his cell instead of sitting down; and Captain Strack forced Plaintiff to endure cold temperatures that affected Plaintiff's diet. (Doc. No. 10, p. 32.) Plaintiff sues Captain Strack in his individual capacity with respect to his constitutional claims and in his individual and official capacities with respect to his ADA and RA claims. *Id.* at 32-33.

Plaintiff claims that Lieutenant Dougherty acted with his deliberate indifference to Plaintiff's serious medical needs by confiscating Plaintiff's personal property, including medications, clothing, and mattress. (Doc. No. 10, p. 33.) While previously testifying that Captain Strack, as Lieutenant Dougherty's supervisor, ordered Lieutenant Dougherty to confiscate the property, Plaintiff later hedged by stating that he could not "testify and swear to the fact that Captain Strack ordered [Lieutenant Dougherty]" to confiscate Plaintiff's personal property. *Id.* at 35, 42. Plaintiff claims that Lieutenant Dougherty violated his due process rights by taking his personal property without a hearing and effectively punished Plaintiff before his disciplinary hearing took place on March 7, 2022. *Id.* at 36.

According to Plaintiff, Lieutenant Dougherty violated his ADA and RA rights because he was responsible for taking away his reasonable accommodations for his disabilities by confiscating his mattress and clothing. (Doc. No. 10, p. 37.) Plaintiff sues Lieutenant Dougherty in his individual capacity with respect to his constitutional claims and official capacity with respect to his ADA and RA claims. *Id.* at 37-38.

Plaintiff claims that Captain Strack, Lieutenant Dougherty, and Captain Sturgis violated his Eighth Amendment rights by allegedly adopting and adhering to a policy or practice requiring officers to confiscate all of an inmate's personal property, including clothes, when the inmate is charged with assaulting an officer.  (Doc. No. 10, pp. 45-46.)  Plaintiff asserts that application of this policy, subjecting Plaintiff to cold conditions in his cell having no working heat, constituted cruel and unusual punishment.  *Id.* at 46.  Plaintiff further claims that these defendants violated his equal protection rights because other inmates placed in his prehearing detention cell block with no working heat were provided clothes, sheets, and blankets.  *Id.* at 47-48.

Plaintiff states that he told Captain Sturgis about his mental disabilities on February 7, 2022, one day before his property was confiscated.  (Doc. No. 10, p. 40.)  Plaintiff believes that Captain Sturgis was aware of his physical disabilities because they are open and obvious.  *Id.* at 40-41.  Plaintiff claims that Captain Sturgis, who at the time was allegedly Captain Strack's immediate supervisor, shares culpability with Captain Strack and Lieutenant Dougherty with respect to his deliberate indifference claim because Captain Sturgis was allegedly aware of the personal property confiscated from Plaintiff and did nothing to stop them from taking the property.  *Id.* at 41-42.

Plaintiff claims that Captain Sturgis violated his due process rights by ordering a food loaf for Plaintiff as a form of punishment without giving Plaintiff a hearing.  (Doc. No. 10, p. 43.)  Plaintiff alleged that all other inmates receive regular food trays.  *Id.*  Plaintiff acknowledged that he was not under any special dietary restriction.  *Id.*

According to Plaintiff, Captain Sturgis violated his ADA and RA rights because he participated "in the whole ordeal" by failing to intervene and prevent the taking of Plaintiff's

mattress and clothing.  (Doc. No. 10, p. 44.)  Plaintiff states that Captain Sturgis denied him the ability to walk, sleep, or concentrate.  *Id.* at 45.  Plaintiff sues Captain Sturgis in his individual capacity with respect to Plaintiff's constitutional claims and in his official capacity with respect to the ADA and RA claims.  *Id.* at 48.

Plaintiff alleges that, during the seven-day period when he had no clothes in the cold prehearing detention cell, he informed Warden Sanchez about the conditions of his cell.  (Doc. No. 10, p. 49.)  At the time Plaintiff talked to Warden Sanchez, Plaintiff was naked and using the paper gown to cover his private parts.  *Id.*  Rather than help Plaintiff, Warden Sanchez allegedly "walked off and did nothing about it" other than say he would try to get Plaintiff his clothing back.  *Id.* at 49-50.  Plaintiff acknowledged he received his clothing back immediately after the seven-day period expired.  *Id.* at 50.

Plaintiff claims that Warden Sanchez acted with deliberate indifference to his serious medical needs by failing to take action despite knowing about Plaintiff's conditions in the prehearing detention cell.  (Doc. No. 10, p. 51.)  He further claims that Warden Sanchez violated his due process rights by having widespread custom "of allowing these things to take place" before a disciplinary hearing.  *Id.*  Plaintiff stated his belief that the confiscation of personal property had happened to other inmates as well.  *Id.* at 51-52.  Plaintiff stated that he did not believe he was being singled out for this treatment.  *Id.* at 52 ("I don't find it to be a personal attack.  I find it to be something they do all the time.").

According to Plaintiff, Warden Sanchez violated his ADA and RA rights in his supervisory capacity by allowing the confiscation of his property to happen and by denying him reasonable accommodations in the form of having no access to his medications, including insulin.  (Doc. No. 10, pp. 53-54.)  Because he did not have access to his insulin, Plaintiff

allegedly urinated more frequently (which Plaintiff alleged was a symptom of high blood sugar), had blurred vision, and had frequent thirst.  *Id.* at 54.  Plaintiff sues Warden Sanchez in his individual capacity with respect to his constitutional claims and in his official capacity with respect to his ADA and RA claims.  *Id.* at 54-55.

Plaintiff filed a Step 1 grievance with Deputy Warden Samaniego on or around February 23 or 24, 2022, complaining about the conditions of his prehearing detention cell, including the taking of all of his personal belongings.  (Doc. No. 10, pp. 55, 58, 60.)  According to Plaintiff, Deputy Warden Samaniego failed to take any action in response to the Step 1 grievance and essentially condoned the wrongdoing by stating in his response to the grievance that Plaintiff's allegations were unsubstantiated.  *Id.* at 55-56.  Plaintiff testified that he filed a Step 2 grievance, which had not been answered at the time of the *Spears* hearing.  *Id.* at 57.

Plaintiff claims that Deputy Warden Samaniego acted with deliberate indifference to his serious medical needs by condoning the policy or practice requiring the taking of an inmate's property, including bedding and clothes for warmth.  (Doc. No. 10, p. 59.)  He further claims that Deputy Warden Samaniego violated his due process rights by failing to make any changes in response to Plaintiff's Step 1 grievance.  *Id.* at 60.

According to Plaintiff, Deputy Warden Samaniego violated his ADA and RA rights by condoning the confiscation of his property and by denying him reasonable accommodations in the form of having no access to his medications, including insulin.  (Doc. No. 10, p. 62.) Plaintiff sues Deputy Warden Samaniego in his individual capacity with respect to his constitutional claims and in his official capacity with respect to his ADA and RA claims.  *Id.*

Plaintiff acknowledges that Director Lumpkin had no personal involvement in connection with Plaintiff's confinement in the prehearing detention cell.  (Doc. No. 10, p. 66.)  Plaintiff

claims that Director Lumpkin acted with deliberate indifference to his serious medical needs by not adhering to certain state statutes, described by Plaintiff as "Tex. Rev. Civ. Stat. Ann. art. 6166a, 6166g, and 6166t." *Id.* at 64-66.

According to Plaintiff, Director Lumpkin violated his ADA and RA rights in his supervisory capacity by condoning the confiscation of his property and by denying him reasonable accommodations in the form of denial of access to his medications, including insulin. (Doc. No. 10, pp. 67-68.)  Plaintiff sues Director Lumpkin in his individual capacity with respect to his constitutional claims and in his official capacity with respect to his ADA and RA claims. *Id.* at 68.

Lastly, with the exception of Director Lumpkin, Plaintiff claims that Defendants conspired against Plaintiff by entering into an agreement to deprive him of his constitutional rights, in violation of 42 U.S.C. §§ 1983, 1985, and 1986.  (Doc. No. 10, pp. 68-69.)  Plaintiff references an alleged meeting between Captain Strack, Lieutenant Dougherty, and Captain Sturgis on February 8, 2022, as evidence of an agreement to conspire against Plaintiff.  *Id.* at 70.

### C. *Legal standard.*

When a prisoner seeks to proceed *in forma pauperis*, the court shall evaluate the complaint and dismiss it without service of process if the court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant).  A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in

law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "[T]he Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that the defendant is liable. *Id*.; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

### D. Discussion.

#### 1. Plaintiff's § 1983 claims.

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,*

487 U.S. 42, 48 (1988).  A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties.  *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983).  There is no vicarious or *respondeat superior* liability of supervisors under section 1983.  *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987); *see also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

A supervisory official may be held liable only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury."  *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir. 2011). "A policy is normally an official statement, ordinance, or regulation, but in certain circumstances a persistent, widespread practice that is so commonplace as to constitute a custom can also be treated as policy."  *McNeil v. Caruso*, No. 17-01688, 2019 WL 1435831, at *2 (M.D. La. Mar. 28, 2019) (citing *Piotrowski v. City of Houston, 237 F.3d 567, 579 (5th Cir. 2001)*).

> **a.  Plaintiff's due process claims against Captain Strack, Lieutenant Dougherty, Captain Sturgis, Warden Sanchez, and Deputy Warden Samaniego in their individual capacities are frivolous or fail to state a claim upon which relief may be granted.  These claims should be dismissed with prejudice.**
>
> > **i.  Plaintiff's procedural due process claims against Captain Strack, Lieutenant Dougherty, and Warden Sanchez in their individual capacities be dismissed with prejudice as frivolous or for failure to state a claim for relief.**

The Supreme Court has held that a state actor's negligent or intentional deprivation of a prisoner's property, resulting from a random and unauthorized action of that state actor, does not

constitute a due process violation if there exists an adequate state post-deprivation remedy.

*Zinermon v. Burch*, 494 U.S. 113, 115 (1990) (citing *Hudson v. Palmer*, 468 U.S. 517, 533

(1984) and *Parratt v. Taylor*, 451 U.S. 527, 535-55 (1981)) (other citation omitted) (referred to

below as the *Parratt/Hudson* doctrine); *Murphy v. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1984).

The confiscation of a prisoner's property pursuant to a prison directive or policy,

however, is not a random or unauthorized act for purposes of the *Parratt/Hudson* doctrine, and

therefore, the existence of an adequate post-deprivation state court remedy does not necessarily

preclude a § 1983 action for a due process violation.  *See Schwarzer v. Wainwright*, 810 F.

App'x 358, 359 (5th Cir. 2020); *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004). "Conduct is

not 'random or unauthorized . . . if the state 'delegated to [the defendants] the power and

authority to effect the very deprivation complained of.'"  *Schwarzer*, 810 F. App'x at 359 (citing

*Zinermon*, 494 U.S. at 138).

Plaintiff claims that Captain Strack and Lieutenant Dougherty violated his procedural due

process rights by taking his personal property without a hearing.  (Doc. No. 10, pp. 30-31, 36.).

Plaintiff further claims that Warden Sanchez violated his procedural due process rights by

adhering to a widespread practice "of allowing these things to take place" before a disciplinary

hearing.  *Id.* at 51.

In this case, Plaintiff does not claim that his personal property was taken under a random

or unauthorized act.  Rather, he alleges that his personal property was confiscated pursuant to a

prison policy or practice requiring officers to confiscate an inmate's personal property, including

clothes, when that inmate is charged with assaulting an officer.  (Doc. No. 10, pp. 45-46.)

Plaintiff's allegations further reflect that he filed Step 1 and Step 2 grievances in which he

complained about the conditions of his prehearing detention cell, including the taking of all of his personal belongings on February 8, 2022.  *Id.* at 55, 57-58, 60.

When a prisoner's property is confiscated pursuant to prison policy, the constitutional requirements of due process are satisfied when the prisoner is afforded ample notice and sufficient opportunity to object to the confiscation of his property by way of the prison grievance system.  *See Dillard v. Davis*, No. 7:19-cv-00081-M-BP, 2022 WL 1096368, at *2 (N.D. Tex. Mar. 24, 2022), *adopted*, 2022 WL 1092929 (N.D. Tex. Apr. 12, 2022) (explaining that "[t]he post-deprivation grievance procedures afford a prisoner the Due Process Clause's constitutional minima"); *Matez v. Foley*, No. 2:17-cv-134-Z, 2020 WL 2926464, at *4 (N.D. Tex. June 3, 2020) (citing *Allen*, 2005 WL 2076033, at *9) (other citations omitted) ("Post-deprivation proceedings such as TDCJ's grievance procedures are adequate to satisfy these requirements with respect to the confiscation of property pursuant to prison regulations.").  By exercising his opportunity to object to the confiscation of his personal property through the TDCJ's grievance procedure, Plaintiff received "ample and sufficient opportunity to object" to the confiscation of his personal property on February 8, 2022.  *See Dillard*, 2022 WL 1096368, at *2.  Accordingly, Plaintiff's constitutional due process rights were observed, and the undersigned recommends that Plaintiff's procedural due process claims against Captain Strack, Lieutenant Dougherty, and Warden Sanchez in their individual capacities be dismissed with prejudice as frivolous or for failure to state a claim for relief.

> *ii.  Plaintiff's substantive due process claims against Captain Strack, Lieutenant Dougherty, Captain Sturgis, and Warden Sanchez in their individual capacities are frivolous or fail to state a claim upon which relief may be granted.  Those claims should be dismissed.*

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, property." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  With respect to Plaintiff's placement in prehearing detention from February 6, 2022 through March 7, 2022 (the date of his disciplinary hearing), the Court must determine whether Plaintiff's confinement "gives rise to a liberty interest protected by due process." *Wilkerson v. Goodwin*, 774 F.3d 845, 852 (5th Cir. 2014).  A prisoner has a liberty interest only in freedom from restraints that impose an atypical and significant hardship in relation to ordinary incidents of prison life, or in those that extend the length or duration of confinement. *See Sandin v. Conner*, 515 U.S. 472, 484-86 (1995).

Liberally construed, Plaintiff contends that Captain Strack, Lieutenant Dougherty, and Captain Sturgis violated his due process rights by punishing Plaintiff before a hearing when they confiscated his personal property, including his clothes for seven days, and forced him to sleep in a cold cell for several days without his clothes, blankets, or a mattress.  Plaintiff also contends that Warden Sanchez violated his due process rights by adhering to a practice that allowed this punishment to happen, and that Captain Sturgis violated his due process rights by ordering Plaintiff to receive a food loaf as his meal three times a day as a form of punishment without giving Plaintiff a hearing.  (Doc. No. 10, pp. 30-31, 36, 43.)

The Fifth Circuit recognizes that long-term placement in segregation, without more, is not atypical as a punishment. *See Wilkerson*, 774 F.3d at 855 (explaining that "two and a half years of segregation is a threshold of sorts for atypicality" and that 12 months in restrictive

housing falls short of that threshold).  Plaintiff's allegations indicating he was subjected to restrictive detention for less than two months falls well short of showing an atypical or significant punishment in relation to ordinary prison life.

Plaintiff further alleges that he was deprived of clothes, sheets, and blankets for seven days in prehearing detention, that he was given only a paper gown to wear during this time period when the cell was cold, and that he was served only food loaves for meals.  (Doc. 10, pp. 16, 24-25, 38, 49.)  Plaintiff acknowledged that he was given his clothes back after seven days, that his detention cell was no different from any other cell other than having no heat, and that he received a food loaf three times a day.  *Id.* at 16, 20, 25, 38.  Taking Plaintiff's allegations as truthful, as the undersigned must do, the undersigned the conditions of his confinement in prehearing detention may well have been harsh and unpleasant.  However, the undersigned finds that the temporary nature of these conditions does not amount to circumstances sufficiently severe enough to implicate a liberty interest as an atypical or significant punishment.  *See Hammond v. Hamilton*, No. 21-3727-P, 2022 WL 4551864, at *5-6 (W.D. La. Sep. 8, 2022), *adopted*, 2022 WL 4545118 (W.D. La. Sep. 28, 2022) (concluding that prison official serving inmate "seven days of food loaf" fell short of implicating a liberty interest under *Sandin*); *Gray v. King*, No. 3:17CV385-CWR-LRA, 2019 WL 3756482, at *2-3 (N.D. Miss. May 17, 2019), *adopted*, 2019 WL 3754918 (N.D. Miss. Aug. 8, 2019) (finding that inmate's placement in administrative segregation for 12 months, "where he went without clothes and was placed in a cold cell for nearly two weeks" of that time, was insufficient to show that the conditions of his confinement were severe enough to give rise to a liberty interest).

Accordingly, the undersigned recommends that Plaintiff's substantive due process claims against Captain Strack, Lieutenant Dougherty, Captain Sturgis, and Warden Sanchez in their

individual capacities be dismissed with prejudice as frivolous or for failure to state a claim upon which relief may be granted.

### iii.  Plaintiff's due process claim against Deputy Warden Samaniego regarding the denial of Plaintiff's Step 1 grievance is frivolous and fails to state a claim upon which relief can be granted.  This claim should be dismissed with prejudice.

Plaintiff claims that Deputy Warden Samaniego violated his due process rights by failing to make any changes in response to Plaintiff's Step 1 grievance complaining about the taking of his personal property and placement in a cold cell without blankets or a mattress.  (Doc. 10, p. 60.)  Plaintiff essentially complains that Deputy Warden Samaniego did not resolve his grievance to Plaintiff's satisfaction.

Plaintiff does not have a federally protected liberty interest in having his grievances investigated and resolved to his satisfaction, and there is no due process violation when prison officials fail to investigate and resolve grievances.  *Geiger v. Jowers*, 404 F.3d 371, 73–74 (5th Cir. 2005)).  Indeed, a prison system is not required to establish a grievance system at all, and the failure of a jail or prison system to establish or adhere to such procedures does not rise to the level of an actionable constitutional claim.  *See* 42 U.S.C. § 1997e(b).  Accordingly, detainees "do not have a constitutionally protected right to a grievance procedure – much less one that complies with their own personal preferences."  *Cornett v. Edge*, No. 3:20-CV-89-M-BN, 2020 WL 890387, at *2 (N.D. Tex. Jan. 16, 2020) (citing *Lijadu v. I.N.S.*, Civ. A. No. 06-0518, 2007 WL 837285, at *3 (W.D. La. Feb. 21, 2007) (citation and internal quotation marks omitted)), *adopted*, No. 3:20-CV-89-M, 2020 WL 888535 (N.D. Tex. Feb. 24, 2020).  "As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless."  *Geiger*, 404 F.3d at 374.  Plaintiff's

speculative and conclusory allegations about Deputy Warden Samaniego's alleged inactions fail

to state a claim.  Plaintiff has not shown that Deputy Warden Samaniego violated Plaintiff's

constitutional rights or clearly established law. The undersigned recommends that Plaintiff's due

process claim against Deputy Warden Samaniego in connection with the denial of his Step 1

grievance be dismissed with prejudice as frivolous and for failure to state a claim for relief.

> **b.  The Court should retain Plaintiff's Eighth Amendment deliberate
> indifference claims against Captain Strack, Lieutenant Dougherty, and
> Captain Sturgis in their individual capacities.  The Court should dismiss
> with prejudice Plaintiff's Eighth Amendment deliberate indifference
> claims against Warden Sanchez, Deputy Warden Samaniego, and
> Director Lumpkin in their individual capacities as frivolous or for
> failure to state a claim upon which relief may be granted.**

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. amend.

VIII.  "The Constitution does not mandate comfortable prisons . . . but neither does it permit

inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the

conditions under which he is confined are subject to scrutiny under the Eighth Amendment."

*Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577,

581 (5th Cir. 1995) (*per curiam*) (internal quotations omitted)).  An Eighth Amendment violation

occurs when a prison official acts with deliberate indifference to an inmate's health and safety.

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The test for deliberate indifference has both an objective and subjective prong.  *Id.* at 839.

Under the objective prong, the inmate "must first prove objective exposure to a substantial risk

of serious harm."  *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex.

Mar. 13, 2017) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)).  To prove the

subjective prong of the deliberate indifference test, the inmate "must establish that the defendants

were aware of an excessive [or substantial] risk to the plaintiff's health or safety, and yet

consciously disregarded the risk." *Cook v. Crow*, No. 1:20-CV-85, 2021 WL 6206795, at *3 (E.D. Tex. July 26, 2021), *adopted*, 2022 WL 23169 (E.D. Tex. Jan. 3, 2022) (citing *Farmer*, 511 U.S. at 397 and *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002)).  A prison official's knowledge of substantial risk may be inferred if the risk was obvious.  *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

Prison officials are liable for failure to provide medical treatment if they are deliberately indifferent to a prisoner's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976).  Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment.  *Id.* at 104-05.

In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted).  Delay in treatment may be actionable under § 1983 only if there has been deliberate indifference and the delay results in substantial harm.  *Stewart v. Murphy,* 174 F.3d 530, 537 (5th Cir.1999); *Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993).

"Deliberate indifference is an extremely high standard to meet."  *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001).  The Fifth Circuit has "consistently recognized . . . that 'deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.'"  *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 458-59 (5th

Cir. 2001)); *see also Aguirre v. City of San Antonio*, 995 F.3d 395, 420 (5th Cir. 2021)

("Negligence or even gross negligence is not enough, the officials must have actual knowledge

of the substantial risk").  Deliberate indifference encompasses only unnecessary and wanton

infliction of pain repugnant to the conscience of mankind.  *McCormick v. Stalder*, 105 F.3d

1059, 1061 (5th Cir. 1997) (citations omitted).

> ### i.  The Court should retain Plaintiff's Eighth Amendment deliberate indifference claims against Captain Strack, Lieutenant Dougherty, and Captain Sturgis in their individual capacities.

Plaintiff's allegations reflect that he suffers from numerous physical and mental

disabilities, and he was prescribed medications for blood pressure, diabetes, cholesterol, acid

reflux, and pain.  (Doc. No. 10, pp. 13-14.)  When Plaintiff was charged with assaulting an

officer on February 8, 2022, all of his personal property, including his clothes, medications, and

bedding, were allegedly confiscated.  *Id.* at 10-11.  Plaintiff was unable to take any medications

for 15 days while confined in prehearing detention and did not receive any insulin for the seven

days immediately following February 8, 2022.  *Id.* at 13-15, 54.  During the time Plaintiff did not

have access to insulin, Plaintiff alleges, he urinated more frequently, had high blood sugar, had

blurred vision, and had frequent thirst.  *Id.* at 54.

When he was without access to medications or clothes, Plaintiff also allegedly

experienced pain as well as numerous psychological symptoms.  (Doc. No. 10, p. 32.)  Plaintiff

further alleges that Captain Strack, Lieutenant Dougherty, and Captain Sturgis all were present at

Plaintiff's cell on February 8, 2022, and that each of them played either an active or passive role

in ordering the confiscation of Plaintiff's clothes and medications on that day.  *Id.* at 11, 35, 41-

42, 70.  According to Plaintiff, Captain Strack, Lieutenant Dougherty, and Captain Sturgis were

each well aware of Plaintiff's open and obvious physical disabilities before the decision was made to confiscate all of his personal property.  *Id.* at 29-30, 34, 40-41.

Plaintiff's allegations, accepted as true, suggest that Captain Strack, Lieutenant Dougherty, and Captain Sturgis were each aware of a serious risk to Plaintiff's health, given his numerous mental and physical issues, but that each disregarded Plaintiff's health risks at the time the order was issued to confiscate his personal property, including clothes, bedding, and prescribed medications.  *See Martinez v. Nueces Cnty. Sheriff's Office/Jail*, 2018 WL 10419357, at *9 (S.D. Tex. Nov. 19, 2018) (Ellington, M.J.), *rejected in part on other grounds*, 2020 WL 206440 (Jan. 13, 2020) (concluding that the denial of bedding supplies for an inmate confined to a cold cell for 22 days stated a deliberate indifference claim sufficient to survive screening); *Patrick v. Bickham*, No. H-11-2095, 2013 WL 326260, at *1 (S.D. Tex. Jan. 28, 2013) (Lake, J.) (acknowledging that inmate initially had stated a deliberate indifference claim sufficient to survive screening based on allegations that he was denied access to certain cholesterol and blood pressure medications on numerous occasions during his stay in prehearing detention).

Further factual and legal development about Plaintiff's prescribed medications and basic clothing and bedding is necessary to determine the precise roles, if any, that these defendants each played in ordering the confiscation of Plaintiff's property as well as their respective awareness, if any, of Plaintiff's medical issues.  Any medical records from the period in question will also be helpful.  Because Plaintiff has stated plausible Eighth Amendment deliberate indifference claims against Captain Strack, Lieutenant Dougherty, and Captain Sturgis, the undersigned recommends that these claims be retained.

> ### ii. Plaintiff's deliberate indifference claim against Warden Sanchez in his individual capacity should be dismissed with prejudice as frivolous or for failure to state a claim upon which relief may be granted.

Plaintiff claims that Warden Sanchez acted with deliberate indifference to his serious medical needs by failing to take action despite knowing about Plaintiff's conditions in the prehearing detention cell.  (Doc. No. 10, p. 51.)  Plaintiff alleges that, during the seven-day period when he had no clothes in the cold prehearing detention cell, he informed Warden Sanchez about the conditions of his cell while he was naked with only a paper gown covering his private parts.  *Id.* at 49.  According to Plaintiff, Warden Sanchez "walked off and did nothing about it" other than say he would try to get Plaintiff his clothing back.  *Id.* at 49-50.  Plaintiff acknowledged he received his clothing back immediately after the seven-day period expired.  *Id.* at 50.

Plaintiff's allegations, accepted as true, fail to suggest that Warden Sanchez had had any personal involvement in the decision to confiscate his personal property, including his medications, clothing, and bedding.  That Warden Sanchez may have had knowledge of Plaintiff's issues in the prehearing detention cell is insufficient to hold Warden Sanchez liable in his supervisory capacity under § 1983.  *See Doe v. Bailey*, No. H-14-2985, 2015 WL 5737666, at *9 (S.D. Tex. Sep. 30, 2015) (citing *Iqbal*, 556 U.S. at 677) ("Mere knowledge and acquiescence on a supervisor's part is insufficient to create supervisory liability under § 1983.").  Plaintiff otherwise does not allege that Warden Sanchez implemented a policy resulting in Plaintiff's alleged injuries arising from the confiscation of his personal property.[4]

---

[4] Plaintiff testified that he could not think of a policy implemented and enforced by Warden Sanchez that caused him harm.  (Doc. No. 10, p. 50.)

Plaintiff, therefore, has failed to allege a plausible deliberate indifference claim against Warden Sanchez in his role as a supervisory official.  Accordingly, the undersigned recommends that Plaintiff's deliberate indifference claim against Warden Sanchez be dismissed as frivolous or for failure to state a claim.

### iii.  Plaintiff's deliberate indifference claim against Deputy Warden Samaniego in his individual capacity should be dismissed with prejudice as frivolous or for failure to state a claim upon which relief may be granted.

Plaintiff claims that Deputy Warden Samaniego acted with deliberate indifference to his serious medical needs by condoning the alleged policy or practice requiring the taking of Plaintiff's property through his rejection of Plaintiff's Step 1 grievance.  (Doc. 10, pp. 55, 58-60.)  Plaintiff, however, provides no specific allegations that Deputy Warden Samaniego personally participated in the acts allegedly causing an Eighth Amendment violation or otherwise implemented a policy causing any constitutional injury to Plaintiff.  *See Porter,* 659 F.3d at 446.

Further, Plaintiff claims that Deputy Warden Samaniego acted with deliberate indifference to Plaintiff's serious medical needs by not resolving his grievance to his satisfaction. Such dissatisfaction with Deputy Warden Samaniego's resolution of Plaintiff's Step 1 grievance fails to raise an actionable deliberate indifference claim under § 1983.  *See Cargill v. Williams*, No. H-20-3605, 2022 WL 4389529, at *8 (S.D. Tex. Sep. 22, 2022) (Ellison, J.) (citing *Geiger*, 404 F.3d at 373-74) (rejecting inmate's deliberate indifference claim based on prison official's failure to investigate and process inmate's grievances in a satisfactory manner); *Cano v. Faust*, No. H-19-0317, 2022 WL 980276, at *12 (S.D. Tex. Mar. 30, 2022) (Ellison, J.) (citing *Geiger*, 404 F.3d at 373-74) (rejecting inmate's deliberate indifference claim against prison official for failing to ensure his grievances were properly investigated and remedied because "[p]risoners

have no constitutional right to a satisfactory resolution of their prison administrative

grievances").

Accordingly, the undersigned recommends that Plaintiff's deliberate indifference claim

against Deputy Warden Samaniego in his individual capacity be dismissed with prejudice as

frivolous or for failure to state a claim upon which relief may be granted.

> ### iv.  Plaintiff's Eighth Amendment claim against Director Lumpkin in his individual capacity should be dismissed with prejudice as frivolous and for failure to state a claim upon which relief may be granted.

Plaintiff does not allege that Director Lumpkin had any personal involvement in

connection with Plaintiff's confinement in the prehearing detention cell.  (Doc. 10, p. 66.)

Rather, Plaintiff claims that Director Lumpkin acted with deliberate indifference to Plaintiff's

serious medical needs by not adhering to certain state statutes, described by Plaintiff as "Tex.

Rev. Civ. Stat. Ann. art. 6166a, 6166g, and 6166t."  (Doc. No. 10, pp. 64-66.).

When the statutes cited by Plaintiff were in effect, they provided as follows: (1) "the

prison system shall be managed and operated in a manner consistent with the operation of a

modern prison system, and that all inmates shall receive humane treatment;" (2) "the director of

the Department of Corrections shall be responsible for the proper care, treatment, feeding,

clothing and management of the inmates;" and (3) "the director shall insure that all prisoners are

fed good and wholesome food, properly prepared under wholesome and sanitary conditions."

*See Ruiz v. Estelle* 503 F. Supp. 1265, 1381 (S.D. Tex. Dec. 12, 1980), *aff'd in part, rev'd in

part*, 679 F.2d 1115 (5th Cir. 1982) (citing former Texas Statutes 6166a, 6166g, and 6166t).

However, these statutes have long since been repealed.  *See* Acts 1989, 71st Leg., ch. 212, § 3.03,

eff. Sept. 1, 1989.  Plaintiff otherwise alleges nothing to suggest that Director Lumpkin, in his

supervisory capacity, adopted or implemented a policy that resulted in a violation of Plaintiff's

Eighth Amendment rights.

Accordingly, the undersigned recommends that Plaintiff's Eighth Amendment claim

against Director Lumpkin in his individual capacity be dismissed with prejudice as frivolous and

for failure to state a claim for relief.

> ### c. Plaintiff's equal protection claims against Captain Strack, Lieutenant Dougherty, Captain Sturgis, Warden Sanchez, and Deputy Warden Samaniego in their individual capacities are frivolous or fail to state a claim upon which relief may be granted. These claims should be dismissed.

The Equal Protection Clause of the Fourteenth Amendment "commands that no State

shall deny to any person within its jurisdiction the equal protection of the laws, which is

essentially a direction that all persons similarly situated should be treated alike." *Duarte v. City

of Lewisville, Tex.*, 858 F.3d 348, 353 (5th Cir. 2017) (internal quotation marks and citations

omitted); *see Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016). To establish an Equal

Protection Clause violation, a plaintiff must prove "purposeful discrimination resulting in a

discriminatory effect among persons similarly situated." *Butts v. Martin*, 877 F.3d 571, 590 (5th

Cir. 2017) (internal quotation marks and citation omitted); *Baranowski v. Hart*, 486 F.3d 112,

123 (5th Cir. 2007).

Nor can Plaintiff rely on a "class of one" equal protection claim in this case. A class of

one claim alleges differential treatment that is not based on membership in a suspect class or on

the infringement of a fundamental right. *See Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 594

(2008); *Wood*, 836 F.3d at 539. Such a claim requires the plaintiff to show that "(1) he or she

was intentionally treated differently from others similarly situated and (2) there was no rational

basis for the difference in treatment." *Id.* (internal quotation marks and citation omitted). A

plaintiff must show "that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." *Shipp v. McMahon*, 234 F.3d 907, 916 (5th Cir. 2000), *overruled on other grounds by McClendon v. City of Columbia*, 305 F.3d 314, 328–29 (5th Cir. 2002)). "'[I]f the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action—even if irrational—does not deny them equal protection of the laws.'" *Little v. Tex. Attorney Gen.*, No. 3:14-CV-3089-D, 2015 WL 5613321 at *6 (N.D. Tex. Sept. 24, 2015) (quoting *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997)).

Here, Plaintiff claims that Captain Strack, Lieutenant Dougherty, Captain Sturgis, Warden Sanchez, and Deputy Warden Samaniego violated his equal protection rights under a "class of one" theory by treating him less favorably than other inmates suffering from similar disabilities who were charged with misconduct.  (Doc. No. 1, pp. 17, 21-22, 27, 33, 39-40.) Plaintiff alleges that, in contrast to him, those inmates were not ordered to strip naked, have property taken, and left to endure freezing temperatures for an extended period of time.  *Id.*

Construed liberally, this is a "class of one" equal protection allegation.  Plaintiff's allegations regarding his equal protection claim, even accepted as true, are conclusory: they are based solely on his belief that he has been treated differently than other inmates with disabilities. Plaintiff testified at the *Spears* hearing that other inmates placed in his prehearing detention cell block with no working heat were provided clothes, sheets, and blankets.  (Doc. No. 10, pp. 47-48.)  Plaintiff, however, offers no facts to suggest that these inmates had similar disabilities or were otherwise charged with using state property as a weapon.  *See id.* at 9.  Plaintiff acknowledged that he could not identify any other inmate with disabilities and facing disciplinary charges who received more favorable treatment than he received.  *Id.* at 26-27.

27 / 36

Rather than offer specific allegations of a discriminatory purpose under a "class of one" theory, Plaintiff points to an alleged policy or practice in place requiring officers to confiscate all personal property, including clothes, when charged with assaulting an officer. *Id.* at 45-46. Plaintiff offers no allegations to suggest that such policy is an irrational one with regard to handling potentially violent inmates charged with assault of a prison official. While Plaintiff's allegations reflect that he may have been subjected to harsh conditions in his prehearing detention cell without clothes or medications, they fail to suggest that any defendant acted with a discriminatory purpose toward him under a "class of one" theory or that any differential treatment had no rational basis. *See Pedraza v. Meyer*, 919 F.2d 317, 318 n.1 (5th Cir. 1990) (vague and conclusory allegations that equal protection rights have been violated are insufficient to raise an equal protection claim); *Alvarez v. Bergt*, No. 5:16cv39, 2016 WL 11200944, at *6 (E.D. Tex. Aug. 10, 2016) (recognizing that, in order to state a "'class of one' equal protection claim," plaintiff must allege facts "showing any such differential treatment had no rational basis"). Plaintiff has made no such showing here.

Accordingly, the undersigned recommends that Plaintiff's equal protection claims against Captain Strack, Lieutenant Dougherty, Captain Sturgis, Warden Sanchez, and Deputy Warden Samaniego in their individual capacities be dismissed with prejudice as frivolous and for failure to state a claim for relief upon which relief may be granted.

> ### d. *Plaintiff's conspiracy claims against Captain Strack, Lieutenant Dougherty, Captain Sturgis, Warden Sanchez, and Deputy Warden Samaniego in their individual capacities are frivolous and fail to state a claim upon which relief may be granted. These claims should be dismissed with prejudice.*

To state a claim for conspiracy under § 1983, a plaintiff must allege that defendant "had 'an agreement to commit an illegal act which resulted in the plaintiff's injury.'" *Hay v. City of*

*Irving*, 893 F.2d 796, 799 (5th Cir. 1990) (quoting *Thomas v. City of New Orleans*, 687 F.2d 80,

83 (5th Cir. 1982)).  With regard to any claim that defendants have conspired under § 1983 to

harm him, a plaintiff must plead specific, non-conclusory facts that establish that there was an

agreement among the defendants to violate his federal civil rights.  *See Priester v. Lowndes*

*Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004); *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir.

1987) (explaining that bald allegations that a conspiracy existed are insufficient and that

plaintiffs asserting conspiracy claims under section 1983 must plead the operative facts on which

their claim is based); *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992) (concluding that

conclusory allegations of a conspiracy will not suffice).

With the exception of Director Lumpkin, Plaintiff claims that all of the defendants

conspired against Plaintiff by entering into an agreement to deprive him of his constitutional

rights, in violation of 42 U.S.C. §§ 1983, 1985, and 1986.  (Doc. No. 10, pp. 68-70.)  Plaintiff

asserts that these defendants created a plan to prevent the Plaintiff from being free of

discrimination and to deprive Plaintiff of his Eighth and Fourteenth Amendment rights.  (Doc.

No. 1, pp. 17-18, 22-23, 27-28, 33-34, 40.)

Plaintiff believes a conspiracy existed because, allegedly: Plaintiff saw Captain Strack,

Lieutenant Dougherty, and Captain Sturgis talking with each other on the day Plaintiff's personal

property was confiscated from his prehearing detention cell; Warden Sanchez walked past

Plaintiff in his cell on one occasion, knowing that the property had been confiscated; and Deputy

Warden Samaniego did nothing in response to Plaintiff's Step 1 grievance.  (Doc. 10, pp. 69-70.)

Plaintiff's contentions are only conclusory allegations, and his belief that these defendants

actually entered into an agreement to violate his rights is pure speculation.  *See Easter v. City of*

*Dallas Probate Div.*, No. 3:21-CV-0860, 2022 WL 2975349, at *8 (N.D. Tex. June 27, 2022),

29 / 36

*adopted*, 2022 WL 2972595 (N.D. Tex. July 27, 2022) (rejecting § 1983 conspiracy claim where allegations were "totally speculative and [did] not show an agreement of any kind between the two defendants"). Therefore, Plaintiff's allegations of a conspiracy are insufficient to state a § 1983 claim.

Further, Plaintiff has failed to state an actionable conspiracy claim under §§ 1985 and 1986. Section 1986 of Title 42 "provides a cause of action for 'wrongs conspired to be done' as set forth in 42 U.S.C. § 1985." *Davis v. Maginnis*, No. H-21-2278, 2021 WL 6340157, at *2 (Dec. 6, 2021). To state a claim for the deprivation of civil rights as set forth in § 1985(3), a complaint must allege the following: "(1) a conspiracy of two or more persons; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 124 (5th Cir. 1996) (citation omitted). "Essential to the claim, however, is that the conspiracy be motivated by racial animus." *Id.* (citations omitted); *see also McCoy v. Homestead Studio Suites Hotels*, 177 F. App'x 442, 446 (5th Cir. 2006) (*per curiam*).

Plaintiff does not allege any specific facts suggesting a race-based conspiracy or race-based animus against him. Thus, Plaintiff fails to state a valid claim for relief under § 1985(3). And because a valid § 1985 claim is a prerequisite to a § 1986 claim, Plaintiff's § 1986 claim also fails. *See Davis, 2021 WL 6340157, at *2 (S.D. Tex. Dec. 6, 2021) (citing Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000)).

Accordingly, the undersigned recommends that Plaintiff's conspiracy claims under §§ 1983, 1985, and 1986 be dismissed with prejudice against Captain Strack, Lieutenant Dougherty, Captain Sturgis, Warden Sanchez, and Deputy Warden Samaniego in their individual capacities as frivolous and for failure to state a claim upon which relief may be granted.

### 2. *Plaintiff's ADA and RA claims.*

#### a. *Legal standard.*

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Similarly, under the RA, "[n]o qualified individual with a disability . . .  shall, solely by reason of her or his such disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

"The RA is operationally identical to the ADA in that both statutes prohibit discrimination against disabled persons; however, the ADA applies only to public entities while the RA applies to any federally funded programs or activities, whether public or private."  *Borum v. Swisher Cnty.*, No. 2:14-CV-127-J, 2015 WL 327508, at *3 (N.D. Tex. Jan. 26, 2015) (citing *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010)).  Courts utilize the same standards in analyzing claims under both the ADA and RA.  *See Frame v. City of Arlington*, 657 F.3d 215, 223-24 (5th Cir. 2011).  Therefore, even though Plaintiff has segregated the ADA and RA claims from one another in his pleadings, the undersigned analyzes his ADA and RA claims as though they were raised in a single claim.  *See Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).

To establish a valid ADA claim, a plaintiff must show that (1) he has a qualifying disability; (2) he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) such discrimination is by reason of his disability.  *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 574 (5th Cir. 2018).  A qualifying disability is a "physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(a)(1).  The definition of "disability" is to be given broad construction.  *See id*. § 12102(4)(A).

To "prevail on a Rehabilitation Act claim, the plaintiff must ultimately prove that the defendant discriminated against him or her *solely* on the basis of disability."  *Taylor v. City of Shreveport*, 798 F.3d 276, 284 (5th Cir. 2015) (emphasis in original); *see also Davidson v. Tex. Dep't of Criminal Justice, Inst. Div.*, 91 F. App'x 963, 965 (5th Cir. 2004) (*per curiam*) (applying similar standard for ADA claim).  To recover money damages, more is required:  Plaintiff must also show that the discrimination was intentional.  *Miraglia*, 901 F.3d at 574.

### b.  *Plaintiff cannot bring ADA and RA claims against Strack in his individual capacity.  This claim should be dismissed.*

Plaintiff sues Captain Strack in his individual capacity[5] with respect to his ADA and RA claims.  (Doc. 10, pp. 32-33.)  A plaintiff cannot sue defendants in their individual capacities under either the ADA or RA.  *See Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999); *Nottingham*, 499 F. App'x at 376 n.6; *Roberts v. Cooper*, No. 6:22cv102, 2022 WL 2442798, at *4 (E.D. Tex. Apr. 29, 2022), *adopted*, 2022 WL 2440776 (E.D. Tex. Jul 5, 2022); *Payne v. Sutterfield*, No. 2:18-CV-084, 2021 WL 3173902, at *3 (N.D. Tex. Jul. 27, 2021).  Accordingly,

---

[5]  At the *Spears* hearing, in contrast to his testimony regarding Captain Strack, Plaintiff stated he does not seek to sue the other five defendants in their individual capacities with respect to his ADA and RA claims.  (Doc. No. 10, pp. 37-38, 48, 54-55, 62, 68.)

the undersigned recommends that Plaintiff's ADA and RA claims against Captain Strack in his individual capacity be dismissed with prejudice as frivolous and for failure to state a claim upon which relief may be granted.

> ### c.  The Court should retain Plaintiff's ADA and RA claims against Captain Strack, Lieutenant Dougherty, Captain Sturgis, Warden Sanchez, Deputy Warden Samaniego, and Director Lumpkin in their official capacities.

Plaintiff brings his ADA and RA claims against each defendant in his official capacity. The ADA does not "itself prohibit suits against both the State and its agencies." *Patrick v. Martin*, No. 2:16-CV-216, 2018 WL 3966349, at *5 (N.D. Tex. Jun. 29, 2018), *adopted*, 2018 WL 3956484 (N.D. Tex. Aug. 17, 2018) (citing 42 U.S.C. § 12131(1)(a)-(b)).  Further, the Fifth Circuit further has held that state officers sued in their official capacities are proper defendants in suits brought under the ADA.  *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412-14 (5th Cir. 2004) ("Defendants have been sued in their official capacities and are therefore representing their respective state agencies (which are proper Title II defendants) for all purposes except the Eleventh Amendment.").

Construing the pleadings liberally and accepting Plaintiff's allegations as true, the undersigned finds that Plaintiff sufficiently shows that he suffers from mental and physical impairments that greatly limit his daily life activities, and that, at least for purposes of this screening, he is a "qualified individual with a disability."[6]  *See Peña Arita v. Cnty. of Starr, Tex.*, No. 7:19-CV-00288, 2020 WL 5505929, at *5 (S.D. Tex. Sept. 11, 2020) (Alvarez, J.) (in

---

[6] Plaintiff claims that he has been diagnosed with a "lateral pelvic tilt" due to a "leg length discrepancy," major depressive disorder with psychotic features, schizophrenia, and PTSD.  (Doc. No. 10, pp. 7-8.)  In addition to construing the pleadings liberally, the undersigned also reads the definition of "disability" broadly.  "The definition of 'disability' is broad and accommodating—an impairment that 'substantially limits' a major life activity need only reduce the disabled person's ability to perform a major life activity as compared to the general population."  *Peña Arita*, 2020 WL 5505929, at *4 (quoting *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590-91 (5th Cir. 2016)).

evaluating a motion to dismiss, the court explains that it cannot say definitely whether the individual suffered a disability, but that the court's role is to "interpret Plaintiffs' complaint as a whole and grant Plaintiffs every reasonable inference to determine whether Plaintiffs state a plausible claim for relief").

Plaintiff alleges that Defendants, despite being aware of Plaintiff's various disabilities, each denied him reasonable accommodations for his mental and physical disabilities by taking away his necessary prescribed medications, his mattress, and his clothing while he was in prehearing detention. Plaintiff further alleges that Defendants prevented him from having any access to his prescribed medications, including access to his insulin for a period of time. Plaintiff's allegations, accepted as true, suggest that the medications constituted accommodations for his disabilities, and that denial of these those medications constituted denial of accommodations for his disabilities, which caused him to suffer more pain and punishment in relation to non-disabled prisoners who also had their property confiscated while housed in prehearing detention. *See Hinojosa v. Livingston*, 994 F. Supp. 2d 840, 843 (S.D. Tex. 2014) (concluding that inmate presented facts sufficient to state the requisite discrimination under the ADA and RA by alleging that prison officials failed to make reasonable accommodations for the inmate's known disabilities, resulting in him suffering more pain and punishment than non-disabled prisoners).

At this early stage in the proceedings, the undersigned concludes that Plaintiff's allegations are sufficient to survive screening and that his ADA and RA claims should be

retained against each of the defendants[7] in their official capacities.  Further factual and legal development of these claims is necessary to determine whether the confiscation of Plaintiff's property, including his clothes, medications, and bedding, caused him to suffer more pain and punishment than his non-disabled counterparts.

### E.  Conclusion and recommendations.

For the reasons stated above and for purposes of § 1915A and §1915(e)(2), the undersigned recommends that the Court RETAIN: (1) Plaintiff's Eighth Amendment deliberate indifference claims against Captain Strack, Lieutenant Dougherty, and Captain Sturgis in their individual capacities; and (2) his ADA and RA claims against Captain Strack, Lieutenant Dougherty, Captain Sturgis, Warden Sanchez, Deputy Warden Samaniego, and Director Lumpkin in their official capacities.  The undersigned will order service on Defendants by separate order.  Further, the undersigned recommends that Plaintiff's remaining § 1983, § 1985, and § 1986 claims against the remaining Defendants in their individual capacities be DISMISSED with prejudice as frivolous or for failure to state a claim for relief.

### F.  Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within 14 days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas.

---

[7] Plaintiff's ADA and RA claims against Director Lumpkin can move forward at this screening stage based on the theory of *respondeat superior*, a theory that in this ADA and RA context is used to impute actions of an employee-agent to an employer.  *See Rodriguez v. Mrs. Baird's Bakery, Inc.*, No. 95-50923, 1997 WL 156989, at *3 (5th Cir. Mar. 25, 1997) (*per curiam*).

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **14 days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

    SIGNED on December 13, 2022.

MITCHEL NEUROCK
United States Magistrate Judge